# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br> 378 North Main Ave. <br> Tucson, AZ 85701, <br><br> *Plaintiff*, <br><br> v. <br><br> LEE ZELDIN, <br> Administrator of the <br> U.S. Environmental Protection Agency <br> 1200 Pennsylvania Ave. NW <br> Washington, D.C. 20460, <br><br> and <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, <br> 1200 Pennsylvania Ave. NW <br> Washington, DC 20460, <br><br> *Defendants.* | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br><br><br><br><br><br><br> (Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

## INTRODUCTION

1. This is a straightforward Clean Air Act deadline suit. Plaintiff Center for Biological Diversity ("Center") seeks to compel Defendants the United States Environmental Protection Agency Administrator Lee Zeldin and the United States Environmental Protection Agency Administrator (together, "EPA") to perform mandatory duties to grant or deny three petitions to object ("Petitions") filed by the Center challenging air pollution permits issued pursuant to Title V of the Clean Air Act.

2. Title V of the Clean Air Act aims to ensure that the nation's largest sources of air pollution fully comply with applicable air quality laws and regulations, are subject to public

scrutiny and regular oversight, and are operated in a manner that assures protection of public health and the environment. Although Title V delegates permitting authority to states, the Clean Air Act provides the EPA shall object to the issuance of permits that fail to comply with the Clean Air Act when petitioned to do so.

3.  At issue are three Title V operating permits (referred to as "Title V permits"): one issued by the state of Colorado, one issued by the state of New Mexico, and one issued by the state of Utah. The three Title V permits each permitted the operation of large oil and gas processing facilities, which are major sources of harmful air pollutants. The facility in Colorado, called the Young Compressor Station, is located in Morgan County northeast of Denver. The facility in New Mexico, called the 32-9 Central Delivery Point, is located in San Juan County northeast of the city of Farmington. The facility in Utah, called the Altamont South Compressor Station, is located in Duchesne County west of the city of Vernal. All three facilities are large sources of gases that create ground-level ozone pollution, the key ingredient of smog, and contribute to regional air quality problems.

4.  The Center filed petitions requesting the EPA Administrator object to the issuance of two of the Title V permits on October 15, 2024, and the other Title V permit on October 21, 2024. The three Petitions called on the EPA Administrator to object over the failure of the three Title V permits to assure compliance with the Clean Air Act.

5.  Under the Clean Air Act, the EPA Administrator was required to grant or deny the Center's Petitions within 60 days of the Petitions being filed. Although more than 60 days have passed, EPA has not acted on the Petitions.

6.  By failing to act on the petition, Defendants UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and ADMINISTRATOR LEE ZELDIN have

deprived Plaintiff CENTER FOR BIOLOGICAL DIVERSITY and its members of the ability to assure that operation of large sources of air pollution comply with the Clean Air Act and protect public health and welfare.

## JURISDICTION

7. This is an action against the EPA Administrator and EPA where there is a failure of the Administrator to perform an act or duty under the Clean Air Act which is not discretionary. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question).

8. An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201(a) and 42 U.S.C. § 7604(a). If the Court orders declaratory relief, 28 U.S.C. § 2202 and 42 U.S.C. § 7604(a) authorize this Court to issue injunctive relief. 42 U.S.C. § 7604(d) authorizes this Court to award Plaintiff's costs and attorneys' fees.

## NOTICE

9. By letter dated December 30, 2024, the Center provided the EPA Administrator with 60-days written notice of the organization's intent to bring suit over the failure of EPA to respond to respond to their Petitions within 60 days of receiving them. The Center provided this notice via certified mail, return receipt requested, pursuant to 42 U.S.C. § 7604(b)(2) and in accordance with 40 C.F.R. § 54. Notice is deemed given on the postmark date, if served by mail. *See* 40 C.F.R. § 54.2. Although more than 60 days have passed since the Center gave notice, EPA has not yet granted or denied the Petitions and remains in violation of the law.

## VENUE

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events and omissions giving rise to the Center's claims occurred in the District of Columbia, given that EPA is headquartered at 1200 Pennsylvania Avenue, NW, in Washington, DC, and performs its official duties in this district. Additionally, Lee Zeldin, the Administrator of the EPA, officially resides in the District of Columbia.

## PARTIES

11. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national 501(c)(3) nonprofit conservation organization with more than 89,000 members throughout the United States and the world. The Center's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us. The Center is headquartered in Tucson, Arizona, with offices throughout the United States, including in Washington, DC.

12. The Center is a "person" within the meaning of 42 U.S.C. § 7602(e). As such, the Center may commence a civil action under 42 U.S.C. § 7604(a).

13. Members of the Center live, raise their families, work, and recreate in areas that are affected by air pollution from the facilities at issue in the Petitions. The Title V permits allow the facilities to release air pollutants that degrade the air used and enjoyed by members of the Center. These pollutants harm the economic, health, aesthetic, recreational, procedural, and organizational interests of members of the Center. EPA's failure to respond to the Center's

Petitions deprives the Center and its members of information about whether the Title V permits comply with the requirements of the Clean Air Act and protect them from exposure to pollutants to the extent required by law.

14. One member of the Center, Andrew Klooster, lives in the Denver Metro Area and regularly recreates on public lands in proximity to the Young Compressor Station where he enjoys viewing wildlife and intends to continue recreating on these lands in the foreseeable future. Pollution from the Young Compressor Station detracts from his recreational enjoyment of lands in the area. Pollution from the Young Compressor Station also contributes to regional air quality and at times is known to contribute to unhealthy levels of ground-level ozone in the Denver Metro Area, which is currently violating federal health limits for ozone, harming Mr. Klooster. Air pollution from the Young Compressor Station harms Mr. Klooster, as well as other Center members. The harms that they would experience as a result of air pollution under the current Title V Permit would be reduced if EPA were to take action on the Petitions and ensure the Young Compressor Station operates in full compliance with all requirements under the Clean Air Act.

15. Another member of the Center, Mike Eisenfeld, lives in Farmington, New Mexico, and regularly recreates on public lands in proximity to the 32-9 Central Delivery Point where he enjoys hiking, viewing wildlife, and exploring the cultural resources of the region and intends to continue recreating on these lands in the foreseeable future. Pollution from the 32-9 Central Delivery detracts from his recreational enjoyment of lands in the area. Pollution from the 32-9 Central Delivery Point also contributes to regional air quality and at times is known to contribute to unhealthy levels of ground-level ozone in the Farmington area, harming Mr. Eisenfeld. Air pollution from the 32-9 Central Delivery Point harms Mr. Eisenfeld, as well as

other Center members. The harms that they would experience as a result of air pollution under the current Title V Permit would be reduced if EPA were to take action on the Petitions and ensure the 32-9 Central Delivery Point operates in full compliance with all requirements under the Clean Air Act.

16. Another Center member, Jeremy Nichols, regularly recreates on public lands in proximity to the Altamont South Compressor Station where he enjoys viewing wildlife, particularly birds, and intends to continue recreating on these lands in the foreseeable future. The region where the Altamont South Compressor Station is called the Uinta Basin, a region that suffers from high ground-level ozone. Pollution from the Altamont South Compressor Station detracts from his recreational enjoyment of lands in the area. Pollution from the Altamont South Compressor Station also contributes to regional air quality and contributes to unhealthy levels of ozone in the Uinta Basin, which is currently violating federal health limits for ozone, harming Mr. Nichols. Air pollution from the Altamont South Compressor Station harms Mr. Nichols, as well as other Center members. The harms that they would experience as a result of air pollution under the current Title V Permit would be reduced if EPA were to take action on the Petitions and ensure the Altamont South Compressor Station operates in full compliance with all requirements under the Clean Air Act.

17. These and other Center members are harmed by flawed Title V permits that do not limit air pollution in accordance with the Clean Air Act and fail to provide the necessary assurances that public health and welfare is protected.

18. During the permitting process for the Young Compressor Station, 32-9 Central Delivery Point, and Altamont South Compressor Station, the Center provided extensive comments to the relevant state regulators detailing concerns regarding the draft Title V permits'

6

terms and conditions and the ability of the permits to comply with the Clean Air Act. After state regulators failed to address those concerns, the Center petitioned the EPA Administrator to object to the issuance of the Title V permits.

19. The Defendants' failure to act on the Center's Petitions prevents the organization and its members from challenging an unfavorable decision or from benefiting from a favorable decision on the Petitions. EPA's decisions on the Petitions, if favorable, are likely to result in changes to the Permits that would reduce pollution from the facilities, thereby reducing the harms that Center members would experience for the foreseeable future. EPA's decisions on the Petitions, if adverse, can be appealed to the United States Court of Appeals for the Tenth Circuit, where relief can be sought, which means EPA's delay in acting would prolong the harms the Center and its members are subjected to.

20. For the Young Compressor Station, the Petition challenged the Title V permit's failure to assure adequate oversight and monitoring of air pollution venting. For the 32-9 Central Delivery Point, the Petition challenged the Title V permit's failure to assure adequate monitoring of emissions during malfunction events. For the Altamont South Compressor Station, the Petition challenged the state of Utah's failure to respond to public comments and to assure adequate monitoring and control of air pollution. A favorable ruling on the Petitions would invariably lead to improved permits, which in turn would mean less harmful pollution and more assurances of compliance.

21. The Clean Air Act violations alleged in this Complaint have injured and continue to injure the interests of the Center and its members. These injuries will continue until the Court grants the relief requested herein. Granting the relief requested in this lawsuit would redress Plaintiff's members' injuries by compelling the Defendants to action that Congress determined to

be an integral part of the regulatory scheme for protecting human health and the environment from air pollution.

22. Defendant Lee Zeldin is the Administrator of the EPA. The Administrator is responsible for implementing the Clean Air Act, including the requirement to grant or deny the Center's Petitions within 60 days of receiving them. Administrator Lee Zeldin is sued in his official capacity.

23. Defendant United States Environmental Protection Agency is the federal agency charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## LEGAL FRAMEWORK

24. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 91-1146, 91st Cong., 2d Sess. 1, 1, (1970) *as reprinted in* 1970 U.S. Code Cong. & Admin. News 5356, 5356. The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1).

25. To help meet this goal, the 1990 amendments to the Clean Air Act created the Title V permit program—an operating permit program that applies to all major sources of air pollution. 42 U.S.C. §§ 7661–7661f. A "major source" for purposes of Title V is any source that has actual emissions or the potential to emit above the major source threshold, which is generally 100 tons per year of any criteria air pollutant, including particulate matter, carbon monoxide, and nitrogen oxides, or 10 tons per year of any Hazardous Air Pollutant, or 25 tons

per year of any combination of Hazardous Air Pollutants. 42 U.S.C. §§ 7661(2); 7602(j); 7513a; 7512a; 7511a; 7412(a)(1); *see also* 40 C.F.R. § 70.3.

26. A primary purpose of the Title V permitting program is to reduce violations of the Clean Air Act and improve enforcement by recording in a single document all the air pollution control requirements that apply to a major source of air pollution. Major sources of air pollution cannot legally discharge pollutants into the air unless they have a valid Title V operating permit. 42 U.S.C. § 7661a(a).

27. Congress charged EPA with administering Title V, *see* 42 U.S.C. § 7661a(b), but the Clean Air Act provides that EPA may approve state programs to administer the Title V permitting program with respect to sources within their borders. 42 U.S.C. § 7661a(d).

28. EPA fully approved Colorado's administration of its Title V permit program in 2000. *See* 65 Fed. Reg. 49,919 (Aug. 16, 2000). The Colorado Department of Public Health and Environment's Air Pollution Control Division is responsible for issuing Title V permits in Colorado.

29. EPA fully approved New Mexico's administration of its Title V permit program in 2004. *See* 69 Fed. Reg. 54244–01 (Sept. 8, 2004). The New Mexico Environment Department's Air Quality Bureau is responsible for issuing Title V permits in New Mexico.

30. EPA fully approved Utah's administration of its Title V permit program in 1995. *See* 60 Fed. Reg. 30.919 (June 8, 1995). The Utah Department of Environmental Quality's Division of Air Quality is responsible for issuing Title V permits in Utah.

31. Before a state with an approved Title V permit program can issue a Title V permit, the State must forward the proposed Title V permit to EPA. *See* 42 U.S.C. § 7661d(a)(1)(B). EPA then has 45 days to review the proposed permit. *See* 42 U.S.C. §

7661d(b)(1). EPA must object to the issuance of the permit if EPA finds that the permit does not comply with all applicable provisions of the Clean Air Act. *Id.*

32. If EPA does not object to the issuance of a Title V permit within its 45-day review period, "any person may petition the Administrator within 60 days after the expiration of the 45-day review period" to object to the proposed permit. 42 U.S.C. § 7661d(b)(2).

33. Once the EPA Administrator receives such a petition, the Clean Air Act requires that "[t]he Administrator shall grant or deny such petition within 60 days after the petition is filed." 42 U.S.C. § 7661d(b)(2). If the EPA fully or partially denies a petition, the Administrator's decision is subject to judicial review. *See* 42 U.S.C. § 7661d(b)(2). Any petition for judicial review must be filed within 60 days after notice of the Administrator's decision is published in the Federal Register. *See* 42 U.S.C. § 7607(b)(1).

34. If the Administrator objects to a permit, the permitting agency must revise and re-submit the permit for EPA approval. 42 U.S.C. § 7661d(b)(3).

35. If the EPA Administrator fails to comply with a duty that is not discretionary, such as acting on a petition within the statutorily mandated timeframe, the Clean Air Act allows any person to bring suit to compel EPA to perform its duty. *See* 42 U.S.C. § 7604(a)(2).

36. Prior to bringing suit to compel mandatory action under the Clean Air Act, the EPA Administrator must first be provided at least 60-days' notice. *See* 42 U.S.C. § 7604(b)(2). Notice is deemed given on the postmark date, if served by mail. *See* 40 C.F.R. § 54.2.

37. Courts are authorized to award costs of litigation, "including reasonable attorney and expert witness fees," in issuing any final order in any action filed under 42 U.S.C. § 7604(a)(2) of the Clean Air Act. 42 U.S.C. § 7604(d).

## FACTUAL BACKGROUND

38. In October 2024, the Center filed petitions requesting that the EPA Administrator object to three state-issued Title V operating permits for oil and gas processing-related sources of air pollution in Colorado, Utah, and New Mexico.

39. The first petition requested the Administrator object to the Colorado Department of Public Health and Environment, Air Pollution Control Division's issuance of a renewed Title V permit for the Young Compressor Station located in Morgan County, Colorado. The Young Compressor Station, owned by Young Gas Storage Company, processes and compresses gas for transmission and is a major source of harmful air pollutants, including volatile organic compounds ("VOCs") and nitrogen oxides.

40. Both VOCs and nitrogen oxides contribute to ground-level ozone, the key ingredient of smog. Ozone is a lethal gas at high levels and at low levels is a respiratory irritant that can trigger asthma attacks, worsen lung disease, harm lung tissue, and even cause premature death. *See* EPA, "Health Effects of Ozone Pollution," website available at https://www.epa.gov/ground-level-ozone-pollution/health-effects-ozone-pollution (last accessed March 14, 2025). Current health-based air quality standards limit concentrations of ozone in the air to no more than 0.070 parts per million over an eight-hour period. *See* 40 C.F.R. § 50.19. This means that if a mass of air contained one million molecules, if only 0.070 of those molecules was ozone gas, it would be dangerous to human health.

41. The Center submitted comments on the draft Title V permit for the Young Compressor Station on June 8, 2024. The comments raised concerns that vented VOC emissions were improperly exempted from oversight under the permit. Colorado responded to these comments on August 1, 2024, and submitted a proposed permit to EPA for its 45-day review. Colorado rejected the Center's comments and made no substantive changes to the permit in

11

response.  The EPA did not object to the issuance of the Title V permit.  On October 15, 2024, the Center timely petitioned the Administrator to object on the basis that the Title V permit improperly exempted certain gas venting emissions from oversight under the permit.

42. The second petition requested the Administrator object to the Utah Department of Environmental Quality, Air Quality Bureau's issuance of a modified Title V operating permit for the Altamont South Compressor Station located in Duchesne County, Utah.  The Altamont South Compressor Station, owned by Kinder Morgan Altamont, processes and compresses gas for transmission and is a major source of harmful air pollutants, including VOCs and nitrogen oxides that contribute to ground-level ozone in the region.

43. The Center submitted comments on the draft Title V permit for the Altamont South Compressor Station on May 22, 2024.  The comments raised a number of concerns related to whether the permit properly limited VOC emissions, required adequate reporting of permit deviations, and assured sufficient monitoring of air pollution.  Utah did not respond to the Center's comments.  Utah submitted a proposed permit to EPA for its 45-day review on July 12, 2024.  The EPA did not object to the issuance of the Title V permit.  On October 15, 2024, the Center timely petitioned the Administrator to object on the basis that the Utah Department of Environmental Quality, Air Quality Bureau did not respond to the Center's comments.

44. The third petition requested that the Administrator object to the New Mexico Environment Department, Air Quality Bureau's issuance of a renewed Title V operating permit for the 32-9 Central Delivery Point located in San Juan County, New Mexico.  The 32-9 Central Delivery Point, owned by Harvest Four Corners, processes and compresses oil gas for transmission and is a major source of harmful air pollutants, including VOCs and nitrogen oxides that contribute to ground-level ozone pollution in the region.

45. The Center submitted comments on the draft Title V permit for the 32-9 Central Delivery Point on May 24, 2024. The comments raised concerns that the draft permit did not require sufficient monitoring of VOC emissions vented during malfunction events and established an improper affirmative defense for violations. New Mexico responded to these comments on August 2, 2024, and submitted a proposed permit to EPA for its 45-day review. New Mexico rejected the Center's comments and made no substantive changes to the permit in response. The EPA did not object to the issuance of the Title V permit. On October 21, 2024, the Center timely petitioned the Administrator to object on the basis that that the Title V permit failed to require sufficient monitoring of venting emissions and improperly set forth an affirmative defense to violations.

46. 42 U.S.C. § 7661d(b)(2) required the EPA Administrator to grant or deny the Center's Petitions within 60 days after they were filed.

47. This means the Administrator was required to grant or deny the Petitions filed on October 15, 2024 no later than December 14, 2024 and the Petition filed on October 21, 2024 no later than December 20, 2024.

48. The Administrator did not grant or deny the Petitions by these dates.

49. Because EPA failed to act by the mandatory deadlines to either grant or deny the Petitions, the Center sent the EPA Administrator a notice of intent to file suit pursuant to 42 U.S.C. § 7604(b)(2). The notice letter, sent via certified U.S. mail with return receipt requested, was postmarked December 30, 2024.

50. More than 60 days have now elapsed since the Center sent the EPA Administrator its notice of intent to file suit. As of the filing of this Complaint, the Defendants have not granted or denied any of the Petitions.

# CLAIMS FOR RELIEF

### First Claim for Relief:
### Failure to Grant or Deny the Center's Clean Air Act Title V Petition, Young Compressor Station, Colorado

51. Plaintiff incorporates by reference the allegations and information in all preceding paragraphs of this Complaint, as if set forth in full herein.

52. The Center timely filed its Petition with the EPA Administrator on October 15, 2024, within 60 days of the conclusion of EPA's 45-day review period and the Administrator's failure to object, seeking objection to the Young Compressor Station Title V permit.

53. Pursuant to 42 U.S.C. § 7661d(b)(2), the Administrator had a nondiscretionary duty to grant or deny the Petition within 60 days after it was filed, or by December 14, 2024.

54. Defendants did not grant or deny the Petition within 60 days. As of the date of this Complaint, Defendants still have not granted or denied the Petition.

55. Accordingly, Defendants have violated and continue to violate the Clean Air Act with respect to the Center's Petition, 42 U.S.C. § 7661d(b)(2).

56. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2).

57. Defendants' violation is ongoing and would continue unless remedied by this Court.

### Second Claim for Relief:
### Failure to Grant or Deny the Center's Clean Air Act Title V Petition, Altamont South Compressor Station, Utah

58. Plaintiff incorporates by reference the allegations and information in all preceding paragraphs of this Complaint, as if set forth in full herein.

59. The Center timely filed its Petition with the EPA Administrator on October 15, 2024, within 60 days of the conclusion of EPA's 45-day review period and the Administrator's failure to object, seeking objection to the Altamont South Compressor Station Title V permit.

60. Pursuant to 42 U.S.C. § 7661d(b)(2), the Administrator had a nondiscretionary duty to grant or deny the Petition within 60 days after it was filed, or by December 14, 2024.

61. Defendants did not grant or deny the Petition within 60 days. As of the date of this Complaint, Defendants still have not granted or denied the Petition.

62. Accordingly, Defendants have violated and continue to violate the Clean Air Act with respect to the Center's Petition, 42 U.S.C. § 7661d(b)(2).

63. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2).

64. Defendants' violation is ongoing and would continue unless remedied by this Court.

### Third Claim for Relief:
### Failure to Grant or Deny the Center's Clean Air Act Title V Petition,
### 32-9 Central Delivery Point, New Mexico

65. Plaintiffs incorporate by reference the allegations and information in all preceding paragraphs of this Complaint, as if set forth in full herein.

66. The Center timely filed its Petition with the EPA Administrator on October 21, 2024, within 60 days of the conclusion of EPA's 45-day review period and the Administrator's failure to object, seeking objection to the 32-9 Central Delivery Point Title V permit.

67. Pursuant to 42 U.S.C. § 7661d(b)(2), the Administrator had a nondiscretionary duty to grant or deny the Petition within 60 days after it was filed, or by December 20, 2024.

15

68. Defendants did not grant or deny the Petition within 60 days. As of the date of this Complaint, Defendants still have not granted or denied the Petition.

69. Accordingly, Defendants have violated and continue to violate the Clean Air Act with respect to the Center's Petition, 42 U.S.C. § 7661d(b)(2).

70. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2).

71. Defendants' violation is ongoing and would continue unless remedied by this Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

A. A declaration that Defendants violated the Clean Air Act by failing to grant or deny within 60 days the Center's Petitions requesting that the Administrator object to the Title V permits for the Young Compressor Station, Altamont South Compressor Station, and 32-9 Central Delivery Point;

B. An order compelling Defendants to grant or deny the Center's Petitions for an objection to the Title V permits by dates certain, in accordance with an expeditious schedule prescribed by the Court, but no later than 60 days after entry of the order, and to publish in the Federal Register a notice granting or denying the Petitions within ten working days following the Administrator's decisions;

  C. An order retaining jurisdiction over this matter to enforce and effectuate the Court's order, until such time as Defendants have fully complied with their mandatory duties under the Clean Air Act;

  D. An order awarding Plaintiff its costs of litigation, including reasonable attorneys' and expert fees; and

  E. Such other and further relief as the Court deems just and proper.


DATE: March 18, 2025

        Respectfully submitted,


           Respectfully submitted,

           */s/ Jonathan Evans*
           Jonathan Evans (Bar No. CA00044)
           CENTER FOR BIOLOGICAL DIVERSITY
           2100 Franklin St., Suite 375
           Oakland, CA 94612
           Cellphone: (213) 598-1466
           Email: jevans@biologicaldiversity.org

           *Counsel for Plaintiff*